**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**VASELJ LJULJDJURDAJ,**[1]

                              **Petitioner,**                          **06-CV-0090**
**v.**                                                          **(GLS)**

**THE PEOPLE OF THE STATE OF NEW YORK;**
**THOMAS HOGAN, Warden,**

                              **Respondents.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PETITIONER:**

**VASELJ LJULJDJURDAJ**
Petitioner, *pro se*

**FOR THE RESPONDENTS:**

**HON. ANDREW M. CUOMO**         **ASHLYN H. DANNELLY, Esq.**
Office of the Attorney General          Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**GARY L. SHARPE**
**United States District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.**      **Background**[2]

      **A.**      **State Court Proceedings**

---

[1] The record reflects different spellings of Ljuljdjurdaj's surname.  For sake of consistency, this Court will utilize the spelling of petitioner's name that was adopted by Immigration and Customs Enforcement ("ICE"), the successor agency to the Immigration and Naturalization Service, when referring to petitioner throughout this Memorandum-Decision and Order.

[2] The background information contained in this Memorandum-Decision and Order is derived from the records supplied to this Court by the respondent.

The records establish that in 2002, petitioner, *pro se* Vaselj Ljuljdjurdaj was charged by an Ulster County grand jury with committing the crime of burglary in the third degree, contrary to N.Y. Penal L. § 140.20.

On July 16, 2003, Ljuljdjurdaj appeared with counsel before Ulster County Court Judge Michael Bruhn for purposes of entering a guilty plea to that charge as well as additional, unrelated charges that were pending against Ljuljdjurdaj in Ulster County. *See* Transcript of Change of Plea (7/16/03) (Dkt. No. 16, Exh. A) at pp. 2-3. At that proceeding, Ljuljdjurdaj's counsel discussed the terms of the plea proposal on the record, after which the County Court engaged in a colloquy with Ljuljdjurdaj regarding the charges that were pending against him. *Id.* at pp. 3-7. The court then accepted his guilty plea. *Id.* at p. 7.

On September 10, 2003, Ljuljdjurdaj appeared with counsel for sentencing before Judge Bruhn. At that proceeding, the court sentenced Ljuljdjurdaj to an indeterminate term of two to four years imprisonment. *See* Transcript of Sentencing of Vaselj Ljuljdjurdaj (9/10/03) (Dkt. No. 16, Exh. B) at p. 8.

Ljuljdjurdaj did not appeal his conviction. *See* Petition at ¶ 8.

On May 25, 2004, while Ljuljdjurdaj was in state custody, ICE issued a detainer warrant in which it indicated that it planned to initiate removal proceedings against Ljuljdjurdaj in light of the above-described conviction. Dkt. No. 16, Exh. G.

Sometime in 2005, Ljuljdjurdaj was released from the Oneida Correctional Facility into the custody of ICE.[3] The record suggests that on December 8, 2005, ICE issued a final order of

---

[3] Petitioner asserts that he was released on April 5, 2005. *See* Memorandum of Law in Support of Amended Petition (attachment to Dkt. No. 6) ("Supporting Mem.") at p. 5. Respondent asserts, and the records of the New York State Department of Correctional Services ("DOCS") reflect, that Ljuljdjurdaj was released on May 5, 2005. *See* Respondent's Memorandum of Law in Opposition to Amended

2

removal relating to Ljuljdjurdaj, however because that agency was unable to timely obtain travel documents from Yugoslavia, his native country, he was released from prison under an order of supervision issued by ICE. *See* Resp. Mem. at p. 5. Although Ljuljdjurdaj's maximum term regarding his state court conviction expired on or about April 23, 2007, respondent asserts that petitioner is nevertheless still subject to the order of supervision previously issued by ICE, and that such agency's final order directing his removal from the United States remains in effect. *Id.* at p. 6.

On October 3, 2005, while Ljuljdjurdaj was being detained by ICE, he filed a *pro se* motion to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law ("CPL"), § 440.10, in Ulster County Court. *See* Dkt. No. 16, Exh. C ("CPL Motion"). In support of that motion, Ljuljdjurdaj principally argued that both his trial counsel and the County Court wrongfully failed to advise Ljuljdjurdaj of the potential consequences that his guilty plea would have on his immigration status. *See* CPL Motion. That application was opposed by the Ulster County District Attorney, and, in an order dated November 20, 2005, Judge Bruhn denied Ljuljdjurdaj's CPL Motion. *See* Dkt. No. 16, Exh. F ("November, 2005 Order"). Ljuljdjurdaj did not seek leave to appeal that order from the New York State Supreme Court Appellate Division, Third Department. *See* Petition at ¶ 12(d)(4).

### B.     This Action

On December 15, 2005, Ljuljdjurdaj filed a *pro se* petition in the Southern District of New York seeking a writ of habeas corpus. *See* Dkt. No. 1. Because such application challenged Ljuljdjurdaj's Ulster County conviction, by order dated January 11, 2006, then-Chief Judge

---

Petition (attachment to Dkt. No. 15) ("Resp. Mem.") at p. 1. The precise date of Ljuljdjurdaj's release, however, is not material to this Court's decision relating to his amended petition.

Michael B. Mukasey of the Southern District transferred Ljuljdjurdaj's petition to this Court. *See*

Dkt. No. 3. In light of deficiencies that existed in his petition, on April 28, 2006, this Court

directed Ljuljdjurdaj to file an amended pleading if he wished to proceed with this action. *See* Dkt.

No. 5. On May 24, 2006, Ljuljdjurdaj filed an amended petition in compliance with the Court's

April, 2006 Order. *See* Dkt. No. 6 ("Am. Pet."). In the supporting memorandum of law he

attached to his amended pleading, Ljuljdjurdaj reasserts the claims he raised in his amended

petition and CPL Motion, and argues that he is entitled to the vacatur of his guilty plea. *See*

Attachment to Dkt. No. 6 ("Supporting Mem.").

This Court thereafter issued an order which directed the respondent to file a response to the

amended petition. Dkt. No. 8. On July 12, 2007, the Office of the Attorney General for the State

of New York, acting on respondent's behalf, filed a response in opposition to Ljuljdjurdaj's

application, together with various exhibits in support of his request to dismiss the petition. *See*

Dkt. Nos. 15-16. This action is currently before this Court for disposition.[4]

## II.     Discussion

### A.     Exhaustion

Respondent initially argues that this Court may dismiss Ljuljdjurdaj's amended petition

because the claims asserted in that pleading are unexhausted. *See* Resp. Mem. at pp. 8-10.

It is well-settled that a federal district court " 'may not grant the habeas petition of a state

prisoner unless it appears that the applicant has exhausted the remedies available in the courts of

the State ....' " *Shabazz v. Artuz*, 336 F.3d 154,160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269

---

[4] Pursuant to General Order No. 32, this Court hereby rescinds the prior reference of this case to Magistrate Judge Randolph F. Treece.

F.3d 78, 89 (2d Cir. 2001)).  Furthermore, it is clear that habeas corpus petitioners bear the burden

of demonstrating that they have fully exhausted available state remedies prior to commencing a

federal habeas action.  *See Brown v. People of the State of New York*, No. 04-CV-1087, 2006 WL

3085704, at *5 (E.D.N.Y. Oct. 30, 2006); *Cruz v. Artuz*, 97-CV-2508, 2002 WL 1359386, at *8

(E.D.N.Y. June 24, 2002) (citing *Colon v. Johnson*, 19 F.Supp.2d 112, 119-20 (S.D.N.Y. 1998))

(other citation omitted).

Respondent notes that Ljuljdjurdaj did not seek leave to appeal the November 2005 Order

of Judge Bruhn which denied petitioner's CPL Motion, and contends that this Court must therefore

deem the claims raised by Ljuljdjurdaj in this matter exhausted but procedurally forfeited.   Resp.

Mem. at pp. 8-10.

Claims raised in a CPL motion are fully exhausted for purposes of 28 U.S.C. § 2254 when a

party has sought leave to appeal the denial of such a motion from the appropriate Appellate

Division.  *See*, *e.g.*, *Walker v. Perlman*, 556 F.Supp.2d 259, 263-64 (S.D.N.Y. 2008) (denial of

CPL motion is exhausted when petitioner seeks leave to appeal the denial of application from the

Appellate Division); *Brooks v. Walker*, No. 01-CV-760, 2006 WL 1875103, at *8 (N.D.N.Y. July

3, 2006) (Sharpe, J.) ("the Second Circuit has held that "once the Appellate Division denied

[petitioner] leave to appeal the denial of [his] section 440.10 motion, [he] had reached  'the end of

the road within the state system' for purposes of exhaustion") (quoting *Marel v. Lord*, No. 95 Civ.

9968, 1998 WL 17730, at *1 (S.D.N.Y. Jan. 16, 1998), *aff'd*, 173 F.3d 845 (2d Cir. 1999)) (other

citations omitted).  Therefore, it would appear, at first blush, that respondent correctly argues that

this Court must "deem" petitioner's claims to be exhausted but procedurally forfeited.  *See* Resp.

Mem. at pp. 8-10; *see*, *e.g.*, *Spence v. Superintendent, Great Meadow Correctional Facility*, 219

5

F.3d 162, 170 (2d Cir. 2000).

However, in *Pesina v. Johnson*, 913 F.2d 53 (2d Cir. 1990), the Second Circuit squarely

held that even when the statutory time limit for seeking leave to appeal the denial of a CPL motion

has passed, federal courts "have no authority to declare as a matter of state law that an appeal from

the denial of [a] Section 440.10 motion is unavailable." *Pesina*, 913 F.2d at 54. Thus, until the

petitioner "presents his claim to the highest court – whether or not it seems likely that he will be

held to be procedurally barred – he has not exhausted available state procedures." *Id.* Therefore,

*Pesina* stands for the proposition that where the petitioner has failed to seek leave to appeal the

denial of a CPL motion from the Appellate Division, district courts must treat claims relating to

such motion unexhausted; courts are not to "deem" such claims exhausted and procedurally barred.

*See Priester v. Senkowski*, No. 02 CIV.3441, 2002 WL 1448303, at * 7 (S.D.N.Y. July 3, 2002)

(citing *Pesina*); *Quintana v. McCoy*, No. 03-CV-5747, 2006 WL 300470, at *5 (S.D.N.Y. Feb. 6,

2006) (noting that although the Second Circuit's holding in *Pesina* "may well be on shaky ground,

it cannot be nullified by this Court").

In light of the *Pesina* court's command, this Court may not properly deem petitioner's

claims as exhausted and procedurally barred, but must instead consider the claims he asserts in this

action as unexhausted.

### B.    Statute of Limitations

Respondent also argues that Ljuljdjurdaj did not timely commence this action. *See* Resp.

Mem. at p. 11.

Enactment by Congress of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") brought about significant changes to the prisoner litigation landscape. One of those

was the institution of a one-year statute of limitations for habeas corpus petitions filed after April

24, 1996. *See* 28 U.S.C. § 2244(d).  This limitations period begins to run from the latest to occur

of certain enumerated events, the only applicable event in this case being "the date on which the

factual predicate of the claim or claims presented could have been discovered through the exercise

of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D).

As noted above, Ljuljdjurdaj was sentenced by the County Court in the underlying criminal

matter on September 10, 2003.  Since he never filed an appeal of that determination, his conviction

became final, for purposes of calculating the commencement of the governing statute of

limitations, on October 10, 2003.  *See Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002)

(AEDPA's "one-year limitations period began running ... when [petitioner's] time for filing a

notice of appeal from his judgment of conviction expired") (citing CPL § 460.10(1)); *D'Angelo v.*

*Basilon*, No. 00 CIV.2374, 2002 WL 550974, at *1 (S.D.N.Y. Apr. 12, 2002) (where petitioner

failed to file notice of appeal, conviction became final thirty days after sentencing) (citing CPL §

460.10(1)).  Thus, in light of the AEDPA's limitations period, Ljuljdjurdaj was required to have

commenced this action no later than Monday, October 11, 2004.  Since petitioner did not sign his

original petition until December 8, 2005, *see* Dkt. No. 1 at p. 29, it would appear as though this

action was not timely commenced.

Petitioner argues, however, that he "did not know about the immigration consequences of

his guilty plea and ... his removal from the United States, [at the time of] his guilty plea ... nor did

he know about it during his incarceration." *See* Supporting Mem. at p. 4.  He claims that only after

he had completed his criminal sentence, in April, 2005, did he realize that he was subject to

removal due to his felony conviction.  *Id.* at p. 5.  Ljuljdjurdaj therefore argues that the one year

7

statute of limitations did not begin to run on his claims until April 5, 2005 – the date on which he

was released from prison and learned of his potential removal from the United States. *Id.* Since he

filed this action in December, 2005, Ljuljdjurdaj argues that it was timely under the AEDPA. *Id.*

Respondent contends that the present action is patently untimely because, *inter alia*,

Ljuljdjurdaj could have discovered that his conviction subjected him to removal from the United

States long before he was released from prison, and that therefore this action must be dismissed as

time-barred under the AEDPA. *See* Resp. Mem. at pp. 13-15.

In September, 1996, 8 U.S.C. § 1101(a), which lists, *inter alia*, the crimes that subject an

alien to removal from the United States, was amended, and the term "aggravated felony" was

expanded so as to include any theft or burglary offense for which the term of imprisonment

imposed on the alien was at least one year. *See* 8 U.S.C. § 1101(a)(43)(G); *see also United States

v. Echavarria-Escobar*, 270 F.3d 1265, 1268 (9th Cir. 2001).

As noted above, Ljuljdjurdaj pleaded guilty to the burglary charge in 2002, and was

sentenced in 2003 to an indeterminate term of imprisonment of two to four years on his burglary

conviction.

In discussing the "due diligence" standard discussed in 28 U.S.C. § 2244(d)(1)(D), the

Second Circuit noted in *Wims v. United States*, 225 F.3d 186 (2d Cir. 2000) that an inmate may

properly be charged with knowledge of facts contained in published legal opinions (and,

accordingly, the limitations period begins to run) on the date such legal opinions become available

in the prison library. *Id*. at 190. Specifically, the *Wims* court noted that the AEDPA's limitations

period begins to run: "when the facts supporting the claim or claims presented could have been

discovered through the exercise of due diligence ... regardless of whether petitioner actually

discovers the relevant facts at a later date." *Wims*, 225 F.3d at 188 (internal quotation and citation

omitted); *see also Didden v. Village of Port Chester*, 322 F.Supp.2d 385, 390 (S.D.N.Y. 2004)

(individuals are "chargeable with the knowledge of rules and regulations duly adopted pursuant to

and under the authority of law") (citations omitted).

It is beyond cavil that the (September) 1996 amendments to 8 U.S.C. § 1101(a) discussed

above would have been available in the law library of prison in which Ljuljdjurdaj was

incarcerated in 2003.  Therefore, he may not now properly claim that he could not have discovered

until April of 2005 that his guilty plea in 2002 subjected him to removal from the United States

This Court therefore agrees with the respondent that the present action is time-barred by the

limitations period imposed by the AEDPA.[5]

###### C.       **Substance of Ljuljdjurdaj's Claims**

####### 1.       **Standard of Review**

Although this action is barred by the statute of limitations for the reasons discussed above,

the Court also notes that the claims asserted by Ljuljdjurdaj are without substance.

Under the AEDPA, a federal district court now has the authority to deny (but not grant) an

unexhausted claim on the merits, rather than require exhaustion.[6]  *See* 28 U.S.C. § 2254(b)(2)

("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the

failure of the applicant to exhaust the remedies available in the courts of the State"); *see also*

*Aparicio*, 269 F.3d at 91 n.5.

---

[5] Nothing before the Court suggests that the statute of limitations should be equitably tolled in this matter.

[6] Prior to the enactment of the AEDPA, a federal court was required to dismiss petitions containing an unexhausted claim that could not be deemed exhausted.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

The standard of review federal district courts are to consider when reviewing unexhausted claims is not settled in this Circuit. *Severino v. Phillips*, No. 05 Civ. 475, 2008 WL 4067421, at *14 (S.D.N.Y. Aug. 25, 2008). Most of the courts in this circuit which have addressed this issue have opined that unexhausted claims are to be dismissed when the court finds them to be "patently frivolous." *Severino*, 2008 WL 4067421, at *14 (citing *Brown v. State of New York*, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005)) (other citation omitted). A minority of district courts, however, have concluded that the dismissal of such claims is warranted when the court determines that "it is perfectly clear that the petitioner does not raise even a colorable federal claim." *Severino*, 2008 WL 4067421, at *14 (internal quotations and citations omitted). However, since Ljuljdjurdaj's habeas claims must be dismissed under either standard, this Court need not opine as to which of these two standards it believes must be utilized in considering the claims before this Court.

### 2.   Review of Petitioner's Grounds for Relief

In his first ground for relief, Ljuljdjurdaj alleges that trial counsel's conduct was objectively unreasonable, and prejudiced Ljuljdjurdaj, because he was not advised by counsel of the immigration consequences to Ljuljdjurdaj of a guilty plea. *See* Am. Pet., Ground One.

In a related claim, Ljuljdjurdaj asserts that his guilty plea must be invalidated because the County Court failed to advise him of the potential immigration consequences of his guilty plea. *Id.*, Ground Three.[7]

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

---

[7] Ljuljdjurdaj does *not* allege that he was incorrectly advised, by either counsel or the court, that there would be *no* immigration consequences attributable to his guilty plea. Rather, petitioner asserts that neither his counsel nor the trial court affirmatively advised him of the negative consequences that Ljuljdjurdaj might experience by pleading guilty. *See* Am. Pet.

defence." U.S. Const., Amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

Additionally, the longstanding test for determining the validity of a plea is whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (plea is valid when it is both knowingly and voluntarily made).

Unfortunately for Ljuljdjurdaj, his claims that the failure of either his counsel or the County Court to advise petitioner of the immigration consequences of his guilty plea entitle him to habeas relief are patently frivolous, and do not assert colorable constitutional claims.

Courts have uniformly rejected claims seeking to overturn an otherwise valid conviction based upon defense counsel's failure to advise the defendant of the potential immigration consequences of a guilty plea. *See United States v. Santelises*, 509 F.2d 703, 704 (2d Cir. 1975) (per curiam) (an attorney's failure to inform a defendant of the immigration consequences of a guilty plea does not constitute ineffective assistance of counsel); *Eisa v. Immigration and Customs Enforcement*, No. 08 CIV 6204, 2008 WL 4223618, at *9 (S.D.N.Y. Sept. 11, 2008) ("the Second

Circuit has squarely held that a failure to advise a defendant about the immigration consequences of a plea does not constitute ineffective assistance") (citing *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002)); *People v. McDonald*, 1 N.Y.3d 109, 114 (2003) ("[t]he mere failure to advise a defendant of the possibility of deportation does not constitute ineffective assistance of counsel") (citations omitted).

Claims challenging the validity of a guilty plea based upon the trial court's failure to advise the petitioner of the possible immigration consequences of a guilty plea have similarly been rejected by federal courts within this Circuit as well as New York State courts. *See Cuero-Flores v. United States*, No. 02 CV 6744, 2005 WL 525534, at *3 (E.D.N.Y. Feb. 24, 2005) ("the Second Circuit has held that a sentencing court does not bear the responsibility of providing a defendant who is pleading guilty with advice regarding the immigration consequences of the plea") (citing *Couto*); *Pietre v. Bintz*, No. 01CV0260, 2003 WL 1562273, at *4 (N.D.N.Y. Mar. 25, 2003) (Sharpe, M.J.) ("[a] state trial court's failure to advise a criminal defendant of the possibility of deportation does not affect the validity of the guilty plea") (citations omitted); *see also People v. Sanchez-Martinez*, 35 A.D.3d 632, 633 (2d Dept. 2006) ("plea was not rendered invalid by the court's failure to advise [appellant] of the possible immigration consequences of his plea") (citing *People v. Ford*, 86 N.Y.2d 397, 403 (1995)); *People v. De La Cruz*, 48 A.D.3d 394, 395 (2d Dept. 2008) (dismissing as without merit claim that trial court and counsel misled defendant regarding the immigration consequences of his guilty plea).

In light of the foregoing, Ljuljdjurdaj's first and third grounds for relief are also denied on the merits.

## 2.      Failure to Seek Judicial Recommendation Against Deportation

In his second ground, petitioner asserts that his trial counsel wrongfully failed to seek a judicial recommendation against deportation ("JRAD") at the time of Ljuljdjurdaj's sentencing. *See* Am. Pet., Ground Two.  He argues that "no one connected with the case ... ever considered the option of discretionary JRAD relief, and that if a request for that relief had been made by counsel, "there is a reasonable probability that the judge would have granted such relief."  Am. Pet. at p. 9.

This claim, however, fails to acknowledge the fact that JRADs were eliminated by Congress in 1990. *See Couto*, 311 F.3d at 189 ("as part of the Immigration Act of 1990, Pub.L. No. 101-649, § 505, 104 Stat. 4978, 5050 (1990), Congress amended former 8 U.S.C. § 1251(b), to eliminate the 'safety valve' of the JRAD"); *United States v. LaPlante*, 57 F.3d 252, (2d Cir. 1995) ("the authority for a JRAD, formerly contained in 8 U.S.C. § 1251(b)(2) (1988), has been repealed").

Since Ljuljdjurdaj was sentenced in 2003, at a time when the sentencing court was powerless to make a judicial recommendation against deportation, petitioner's claim that his trial counsel was ineffective because he failed to request a JRAD from the sentencing court is patently frivolous.  The Court alternatively finds that this ground does not assert a colorable constitutional claim. *E.g. Cisse v. United States*, 330 F.Supp.2d 336, 343 (S.D.N.Y. 2004) (rejecting claims that counsel provided ineffective assistance of counsel because he failed to pursue a JRAD; "[t]here was no error by counsel, however, because Congress eliminated the JRAD in the Immigration Act of 1990, well before [petitioner's] indictment in 2000").

## III.    Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability,
> an appeal may not be taken to the court of appeals from –

13

> (A) the final order in a habeas corpus proceeding in
> which the detention complained of arises out of
> process issued by a State court ....[8]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has

made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).

Since petitioner has failed to make such a showing herein, the Court declines to issue any

Certificate of Appealability in this matter.

 **WHEREFORE**, after having reviewed the supplied record, the documents submitted by

the parties in conjunction with this action, the applicable law, and for the reasons discussed herein,

it is hereby

 **ORDERED**, that Ljuljdjurdaj's amended petition (Dkt. No. 6) is **DENIED** and

**DISMISSED** for the reasons stated above, and it is further

 **ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order

upon the parties to this action by electronic or regular mail, and it is further

 **ORDERED**, that any records that were not filed in this action be returned directly to the

Attorney General at the conclusion of these proceedings (including any appeal of this

Memorandum-Decision and Order filed by any party).

 A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Dated: January 29, 2009

             _____
             United States District Court Judge

---

[8] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not
proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28
U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).